UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

IRIS COVINGTON

CIVIL ACTION

VERSUS

NUMBER 06-812-RET-SCR

SID GAUTREAUX, SHERIFF,
EAST BATON ROUGE PARISH

## <u>NOTICE</u>

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. §636(b)(1), you have ten days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein.  Failure to file written objections to the proposed findings, conclusions and recommendations within ten days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Baton Rouge, Louisiana, March 27, 2009.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


IRIS COVINGTON

                                        CIVIL ACTION

VERSUS

                                        NUMBER 06-812-RET-SCR

SID GAUTREAUX, SHERIFF,
EAST BATON ROUGE PARISH


## MAGISTRATE JUDGE'S REPORT

Before the court is a Motion for Summary Judgment filed by defendant Sid Gautreaux, Sheriff of East Baton Rouge Parish. Record document number 19.  The motion is opposed.[1]


## Background

Plaintiff Iris Covington filed this action alleging both federal and state law claims arising out of her employment with the Sheriff's office.  Plaintiff alleged discrimination and retaliation under the Americans With Disabilities Act (ADA) and the Louisiana Employment Discrimination Law (LEDL).  42 U.S.C. § 12112; LSA-R.S. 23:323.  Plaintiff had two periods of employment with the Sheriff's office.  This action asserts claims related to the plaintiff's employment which began in September 1997 and ended with the plaintiff's alleged involuntary resignation in January 2005. During this period of employment, except for brief stints at the prison and in the Uniform Patrol Division, the plaintiff worked as

---

[1] Record document number 26.  Defendant also filed a reply memorandum.  Record document number 30.

a deputy in the communications division of the Sheriff's office.

Plaintiff alleged that she is a "qualified individual with a disability" within the meaning of the ADA and LEDL, and that the defendant violated these laws by engaging is a pattern of harassment based on her disability, severe scoliosis. Plaintiff alleged further that the defendant refused her requests for reasonable accommodation, including requests to work eight hour straight days rather than 12 hours a day on rotating shifts. Plaintiff asserted that the defendant's harassment and refusal to accommodate her disability ultimately caused her to resign, resulting in her constructive discharge on January 6, 2005. Thus, the plaintiff alleged claims for harassment, discrimination based on both a refusal to accommodate and constructive discharge, and retaliation under the ADA and LEDL. Plaintiff also asserted a claim for intentional infliction of emotional distress under state tort law.

## Motion for Summary Judgment

Defendant argued that the summary judgment record supports dismissal of the plaintiff's claims under federal and state law. Defendant advanced the following arguments in support of his summary judgment motion: (1) because there is no evidence that the plaintiff's impairments substantially limit her in a major life activity, she is not "disabled" within the meaning of the ADA and the LEDL; (2) because the evidence shows that the plaintiff could

3

not attend work reliably and was unable to perform the essential functions of her job, she is also not a "qualified individual" with a disability; (3) the incidents underlying the plaintiff's harassment claim were not severe or pervasive, nor is there any evidence that the defendant failed to take prompt remedial action when advised of offensive comments related to the plaintiff's back impairments; (4) because there is no evidence that the plaintiff conveyed to the defendant that she would accept a straight day position at lower pay and no evidence that such an accommodation was medically necessary, the plaintiff cannot establish that the defendant is liable for failure to accommodate her disability; (5) plaintiff cannot show that she was subjected to an adverse employment action, because she voluntarily resigned and her working conditions were not so intolerable that they support a finding of constructive discharge; (6) because there is no evidence that the plaintiff engaged in any protected activity, she cannot establish this essential element of a retaliation claim; (7) there is no evidence that the defendant acted with malice or with reckless indifference to the plaintiff's rights under the ADA; and, (8) the plaintiff has no evidence to support the essential elements of her claim for intentional infliction of emotional distress.  Each of these arguments was opposed by the plaintiff.

    Both sides relied on extensive deposition excerpts.  Plaintiff and the defendant submitted excerpts from the depositions of the

plaintiff,[2] Dr. Jorge Isaza,[3] Dr. Rachel Wissner,[4] and Vernon Frederic.[5] Defendant also relied on excerpts from the deposition of Dr. William W. Gladney, Jr.[6] Plaintiff also relied on deposition testimony from Rhonda McGehee,[7] Stephanie Maurello,[8]

---

[2] Plaintiff and Defendant Exhibit A.

[3] Plaintiff Exhibit B and Defendant Exhibit D.  Dr. Isaza is the plaintiff's treating orthopaedic physician for her scoliosis and related spinal conditions.

[4] Plaintiff Exhibit C and Defendant Exhibit J.  Dr. Wissner is the plaintiff's family general health physician.

[5] Plaintiff Exhibit I and Defendant Exhibit B. Frederic was the supervisor and commander of the communications division of the East Baton Rouge Sheriff's office from January 1, 2004 until February 15, 2008.

[6] Defendant Exhibit C.  Dr. Wissner referred the plaintiff to Dr. Gladney, who is a neurologist, for treatment of her migraine headaches.

[7] Plaintiff Exhibit D.  McGehee worked in the communications division during the relevant time period.  The rosters from 2004 showed that McGehee was a lieutenant and functioned as a communications training officer/instructor or manager.  McGehee depo., pp. 25, 64-65; Defendant Exhibit E, White affidavit, attached rosters.

[8] Plaintiff Exhibit E. Maurello also worked in the communications division during the relevant time period.  She has worked as an eight hour day shift Telecommunicator since October 2001, and also works in the radio room with Sergeant Luker.

Wendell Raborn,[9] Dana Bass,[10] Gloria Ballard,[11] James S. Covington[12] and Pat Opperman.[13]   Defendant submitted affidavits from Tammy White,[14] C. Don Dartez[15] and Frederic,[16] along with a copy of the Complaint,[17] the plaintiff's Charge of Discrimination and the Notice of Right to Sue she received from the Equal Employment Opportunity Commission.[18]

---

[9] Plaintiff Exhibit F.   Raborn was a major, serving as the Chief of Uniform Patrol.  He supervised the communications division and was Frederic's supervisor.

[10] Plaintiff Exhibit G.  Bass was a lieutenant and one of the plaintiff's shift supervisors in 2004.

[11] Plaintiff Exhibit H.   Ballard was hired as a basic dispatcher and in 2003 or 2004 was promoted to day communications training officer in the communications division.   Shortly thereafter, Ballard was promoted to corporal and later to sergeant.

[12] Plaintiff Exhibit J.   James Covington is the plaintiff's spouse.

[13] Plaintiff Exhibit K.  In 2004 Opperman was a lieutenant and shift supervisor in the communications division.

[14] Defendant Exhibit E.  White has been a Telecommunicator II in the communications division since 2002.  She acts as secretary to the captain of communications.  White submitted her affidavit in connection with the 2004 rosters and provided information to establish that the rosters satisfy the business records hearsay exception.

[15] Defendant Exhibit F.  Dartez is the Human Resources Director for the East Baton Rouge Parish Sheriff's Office.

[16] Defendant Exhibit G.

[17] Defendant Exhibit I.

[18] Defendant Exhibit H.

### Applicable Law

Summary judgment is only proper when the moving party, in a properly supported motion, demonstrates that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law.  Rule 56(c), Fed.R.Civ.P.; *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2510 (1986).  If the moving party carries its burden under Rule 56(c), the opposing party must direct the court's attention to specific evidence in the record which demonstrates that it can satisfy a reasonable jury that it is entitled to verdict in its favor.  *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512.  This burden is not satisfied by some metaphysical doubt as to the material facts, conclusory allegations, unsubstantiated assertions or only a scintilla of evidence.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  In resolving the motion the court must review all the evidence and the record taken as a whole in the light most favorable to the party opposing the motion, and draw all reasonable inferences in that party's favor.  *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.  The court may not make credibility findings, weigh the evidence, or resolve factual disputes.  *Id.*; *Reeves v. Sanderson Plumbing Prods.*, *Inc.*,  530 U.S. 133, 150, 120 S.Ct. 2097, 2110 (2000).  On summary judgment, evidence may only be considered to the extent not based on hearsay or other information excludable at trial.  *Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir. 1995); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547,

549 (5th Cir. 1987).

The substantive law dictates which facts are material. *Canady v. Bossier Parish School Bd.*, 240 F.3d 437, 439 (5th Cir. 2001). In this case the court must apply the law applicable to the ADA, the LEDL and Louisiana state law claims for intentional infliction of emotional distress. Because the LEDL is patterned after the corresponding federal law under the ADA, the legal analysis is the same. *Mincey v. Dow Chemical Co.*, 217 F.Supp.2d 737, 742 (M.D. La. 2002); *Savoy v. Borden's Milk Products*, L.P., 2006 WL 2914647 (W.D. La. Oct. 10, 2006).

**ADA and LEDL: Disparate Treatment Claim**

"The ADA makes it unlawful for an employer to discriminate against 'a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.'" *Rodriguez v. ConAgra Grocery Prods. Co.*, 436 F.3d 468, 474 (5th Cir. 2006), *quoting*, 42 U.S.C. § 12112(a). To establish a prima facie case of intentional discrimination under the ADA, a plaintiff must show that (1) she is an individual with a disability; (2) she is otherwise qualified to perform the duties of the position; (3) she experienced an adverse employment action, and (4) was replaced by a non-disabled person or treated less favorably than non-disabled employees. *Seaman v. CSPH, Inc.*, 179 F.3d 297, 300 (5th Cir. 1999); *McInnis v. Alamo*

8

*Community College Dist.*, 207 F.3d 276, 279-80 (5th Cir. 2000).
Whether the plaintiff proceeds on a disparate treatment, harassment
or reasonable accommodation theory, the plaintiff must prove the
first two elements of the prima facie case - that she is a
qualified individual with a disability.[19]

The term "individual with a disability" means an individual
who: (1) has a physical or mental impairment that substantially
limits one or more of the major life activities of such individual;
(2) has a record of such an impairment; or (3) is regarded as
having such an impairment. *Cutrera v. Board of Sup'rs of Louisiana
State University*, 429 F.3d 108, 111 (5th Cir. 2005); *Deas v.
River West, L.P.*, 152 F.3d 471, 475 n.6 (5th Cir. 1998),
*cert.denied*, 527 U.S. 1035, 119 S.Ct. 2392 (1999). Thus, plaintiff
must first satisfy the threshold requirement that she has a
disability under at least one of these statutory theories. *Rogers
v. International Marine Terminals, Inc.*, 87 F.3d 755, 758 (5th Cir.
1996); *Bridges v. City of Bossier*, 92 F.3d 329, 331 (5th Cir.
1996), *cert. denied*, 519 U.S. 1093, 117 S.Ct. 770 (1997). An

---

[19] Congress recently enacted the ADA Amendments Act of 2008
(ADAAA). The effective date of the new law is January 1, 2009.
Any change in the law would not affect the plaintiff's claim in
this case which arose before the ADAAA was enacted. *See*, *Schmitz
v. Louisiana,* 2009 WL 210497 (M.D.La. Jan. 27, 2009), *citing*,
*Rudolph v. U.S. Enrichment Corp., Inc.*, 2009 WL 111737 (W.D. Ky.,
Jan. 15, 2009); *E.E.O.C. v. Agro Distribution LLC*, 555 F.3d 462,
n.8 (5th Cir. 2009). *But cf., Jenkins v. National Bd. of Medical
Examiners*, 2009 WL 331638 (6th Cir. Feb. 11, 2009)(ADAAA applies
because suit for prospective injunctive relief was pending on
appeal when amendments became effective).

impairment standing alone, is not necessarily a disability.[20]   To be disabled, one must have a condition that "substantially limits" a "major life activity."   Major life activities refer to those activities that are of central importance to most people's everyday lives.  *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007).  The term "major life activities" means "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."  *Watson v. Texas Youth Com'n*, 269 Fed.Appx. 498, 500 (5th Cir. 2008).  While not specifically listed in the EEOC regulations, major life activities can include lifting, reaching, sitting and standing.  *Jenkins*, *supra*, citing, *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 725, n. 7 (5th Cir. 1995).

The term "substantially limits" means either (a) an inability "to perform a major life activity that the average person in the general population can perform" or (b) a significant restriction "as to the condition, manner, or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity."  *Watson*, *supra*.  Factors to be considered in determining whether an impairment is substantially limiting are: (1) the nature and

---

[20]  The disability determination is not necessarily based on the name or diagnosis of the impairment, but rather on the effect of that impairment on the life of the individual.  *Deas*, 152 F.3d at 478.

severity of the impairment, (2) its duration or expected duration, and (3) its actual or expected permanent or long-term impact. *Gonzales v. City of New Braunfels, Tex.*, 176 F.3d 834, 836 (5th Cir 1999).

Substantially limited in the major life activity of working means one must be significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes, as compared to the average person having comparable training, skills and abilities. The inability to do a single, particular job, or a narrow range of jobs, does not constitute a substantial limitation in the major life activity of working. 29 CFR §1630.2(j)(3)(i); *Bridges*, 92 F.3d at 332.

An individual may also qualify as disabled if he or she is "regarded as" having an impairment that substantially limits one or more major life activities. *Deas*, 152 F.3d at 475. In order to be regarded as disabled a plaintiff must: (1) have an impairment that does not substantially limit major life activities, but be treated as such by an employer; (2) have an impairment that substantially limits one or more major life activities, but only because of the attitudes of others toward the impairment; or (3) have no actual impairment, but be treated by an employer as having a substantially limiting impairment. *McInnis v. Alamo Community College Dist.*, 207 F.3d 276, 281 (5th Cir. 2000). The plaintiff must also establish that the impairment, if it existed as perceived would be substantially limiting. *Id*.

11

A "qualified individual" with a disability is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Rodriguez*, 436 F.3d at 474. Plaintiff bears the burden of proving that she is a qualified individual with a disability.  Therefore, she must show that she can perform the essential functions of the job, and if not, that there is a reasonable accommodation by the employer that would enable her to perform those essential functions. *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 806, 119 S.Ct. 1597, 1603 (1999).  Essential functions are the fundamental duties of the job that the individual who holds the position must be able to perform unaided or with the assistance of a reasonable accommodation, and do not include the job's marginal functions. *E.E.O.C. v. E.I. Du Pont de Nemours & Co.*, 480 F.3d 724, 730 (5th Cir. 2007).

Plaintiff may demonstrate that she has been subjected to an adverse employment action by establishing a "constructive discharge."

> To establish a constructive discharge claim, an employee "must offer evidence that the employer made the employee's working conditions so intolerable that a reasonable employee would feel compelled to resign." *Brown v. Bunge Corp.*, 207 F.3d 776, 782 (5th Cir.2000) (quoting *Barrow v. New Orleans Steamship Ass'n*, 10 F.3d 292, 297 (5th Cir.1994)). This objective test has been referred to as the reasonable employee test. *See Haley v. Alliance Compressor LLC*, 391 F.3d 644, 650 (5th Cir.2004). The evidence "must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment."

> *Landgraf v. USI Film Prods.*, 968 F.2d 427, 430 (5th Cir.1992) (citation omitted). We have considered the relevancy of the following events in determining whether a reasonable employee would feel compelled to resign:
>> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (6) offers of early retirement that would make the employee worse off whether the offer were accepted or not.
>
> *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 481 (5th Cir. 2008) (quoting *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 771-72 (5th Cir. 2001)).

*Stover v. Hattiesburg Public School Dist.*, 549 F.3d 985, 991 (5th Cir. 2008).

After the plaintiff sets forth her prima facie case, this shifts the burden of production to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. If the defendant carries its burden of production, the plaintiff must then offer sufficient evidence to create a genuine issue of material fact either that the defendant's reason is not true, but is instead a pretext for discrimination, or that the defendant's reason, while true, is only one of the reasons for its conduct and another motivating factor is the prohibited discriminatory conduct. *Knox v. City of Monroe*, 2008 WL 5157913 (W.D. La. Dec. 9, 2008), citing, *Rachid*, *supra*; *St. John v. NCI Bldg. Systems, Inc.*, 537 F.Supp.2d 848, 858 (S.D. Tex. 2008); *Evans v. Texas Dept. of Transp.*, 547 F.Supp.2d 626, 640 (E.D. Tex.

2007).[21]

### ADA and LEDL: Failure to Accommodate Claim

In order to achieve its goals, the ADA also prohibits discrimination by employer's failure to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is a job applicant or employee, unless the employer can demonstrate that the accommodation would impose an undue hardship on its operations. 42 U.S.C. § 12112(b)(5)(A); *Burch v. Coca-Cola Co.*, 119 F.3d 305, 314 (5th Cir. 1997). A plaintiff claiming discrimination based on an employer's failure to accommodate a disability must show that (1) she is an individual with a disability; (2) she can perform the essential functions of the job with or without reasonable accommodations, and (3) the employer had notice of the disability/limitations and failed to provide reasonable accommodation. *Bridges v. Department of Social Services*, 254 F.3d 71 (5th Cir. 2001); *Gammage v. West Jasper School Board of Educ.*,

---

[21] The Fifth Circuit has not yet specifically held that the "modified *McDonnell-Douglas* scheme" established in *Rachid*, an Age Discrimination in Employment Act (ADEA) case, applies in ADA actions. *See*, *Pinkerton*, 529 F.3d at 519, n. 35. The rationale of *Rachid*'s modified *McDonnell-Douglas* analysis rests on the fact that a "motivating factor" is the proper causation standard to determine liability under Title VII and the ADEA. Given the application of *Rachid* in ADA cases by district courts in the Fifth Circuit, the Fifth Circuit's analysis in *Rachid* and *Richardson v. Monitronics Intern., Inc.*, 434 F.3d 327 (Cir. 2005)(applying *Rachid* to Family and Medical Leave Act (FMLA) retaliation case), and the Fifth Circuit's determination that a "motivating factor" is the proper standard of causation under the ADA, the modified *McDonnell-Douglas* framework will be applied to the plaintiff's ADA/LEDL claim.

179 F.3d 952, 954-55 (5th Cir. 1999).[22]

In general it is the responsibility of the individual with the disability to inform the employer that an accommodation is needed, and once an accommodation is properly requested the responsibility for formulating a reasonable accommodation is shared between the employee and employer.  The employee's request for accommodation triggers the employer's obligation to participate in the interactive process of determining an accommodation.  If the employee fails to request an accommodation, the employer cannot be held liable for failing to accommodate.  *Taylor v. Principal Financial Group, Inc.*, 93 F.3d 155, 165 (5th Cir.); *cert. denied*, 519 U.S. 1029, 117 S.Ct. 586 (1996).

An employer's duty to make reasonable accommodations does not require an employer "to relieve the employee of any essential functions of the job, modify the actual duties, or reassign existing employees or hire new employees to perform those duties." *Robertson v. Neuromedical Center*, 161 F.3d 292, 295 (5th Cir. 1998), *cert.denied*, 526 U.S. 1098, 119 S.Ct. 1575 (1999).

**ADA and LEDL: Retaliation Claim**

To prevail on a claim of retaliation under the ADA, a plaintiff must show (1) engagement in an activity protected under

---

[22] A failure-to-accommodate claim under the ADA is distinct from a claim of disparate treatment and is analyzed separately under the applicable law.  However, a failure to accommodate may provide evidence of disparate treatment. *Bridges*, 254 F.3d at n. 1.

the ADA; (2) an adverse employment action; and (3) a causal connection between the protected act and the adverse employment action. 42 U.S.C. § 12203(a) and (b); *Seaman*, 179 F.3d at 301. Once the plaintiff has established a prima facie case, the defendant must come forward with a legitimate, non-discriminatory reason for the adverse action.  If such a reason is advanced, the plaintiff must adduce sufficient evidence to show that the proffered reason is a pretext for retaliation.  Ultimately, the employee must show that "but for" the protected activity, the adverse employment action would not have occurred.  *Id*.

   *Burlington Northern & Santa Fe Railway Co. v. White*,[23] clarified the standard that applies to the second element of the plaintiff's prima facie case of retaliation - establishing an adverse employment action.  The court held that Title VII's retaliation provision is not limited to actions and harms that relate to employment or occur at the workplace.  It covers employer actions materially adverse to a reasonable employee, that is, actions that well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.  *Burlington* overruled Fifth Circuit precedent which limited actionable Title VII retaliatory conduct to ultimate employment decisions.  *Burlington*, 126 S.Ct. at 2410.  Although *Burlington Northern* was a Title VII retaliation case, the same standard applies to ADA retaliation claims.  *Grubic v. City of Waco*, 262 Fed.Appx. 665 (5th Cir. 2008).

---

[23] 548 U.S. 53, 126 S.Ct. 2405, 2409 (2006).

**ADA and LEDL:  Disability-Based Harassment Claim**

A hostile-work environment, sufficient to give rise to an action under the ADA, exists when "the disability-based harassment [is] '... sufficiently pervasive or severe to alter the conditions of employment and create an abusive working environment'". *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 235-36 (5th Cir. 2001) (quoting *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F .3d 558, 563 (5th Cir. 1998)).  A claim for disability based harassment under the ADA is modeled after similar claims under Title VII. *Id.; Ballard v. Healthsouth Corp.*, 147 F.Supp.2d 529, 536 (N.D. Tex. 2001).   To succeed on this claim, a plaintiff must demonstrate: (1) that she belongs to a protected group; (2) that she was subjected to unwelcome harassment; (3) that the harassment complained of was based on her disability or disabilities; (4) that the harassment complained of affected a term, condition, or privilege of employment. *Gowesky v. Singing River Hosp. Systems*, 321 F.3d 503, 509 (5th Cir. 2003).  If the alleged harassment is committed by a co-worker rather than a supervisor, the plaintiff must also prove a fifth element, which is proof that her employer knew or should have known of the harassment and failed to take prompt remedial action. *Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999); *Hockman v. Westward Communications, LLC*, 407 F.3d 317, 325 (5th Cir. 2004).[24]

---

[24] *Citing*, *Jones v. Flagship Int'l*, 793 F.2d 714, 719-20 (5th (continued...)

For harassment to affect a term, condition or privilege of employment it must be both objectively and subjectively abusive - "one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 479 (5th Cir. 2008), citing, *Faragher v. City of Boca Raton*, 524 U.S. 775, 786, 118 S.Ct. 2275 (1998). Whether a working environment is objectively hostile or abusive is determined by considering the totality of the circumstances. Courts look to: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating as opposed to a mere offensive utterance; (4) whether it unreasonably interferes with an employee's work performance, and (5) whether the conduct undermines the plaintiff's workplace competence. *Hockman*, 407 F.3d at 325-26; *Walker v. Thompson*, 214 F.3d 615, 625-26 (5th Cir. 2000); *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 371 (1993).

Not all harassment will affect the terms, conditions, or privileges of employment. The mere utterance of an offensive comment or remark which hurts an employee's feelings is not sufficient to affect the conditions of employment. Simple teasing, offhand comments, and isolated incidents, unless they are extremely serious, are not sufficient to affect the terms, conditions or privileges of employment. *Meritor Sav. Bank, FSB v. Vinson*, 477

[24](...continued)
Cir. 1986), *cert. denied*, 479 U.S. 1065, 107 S.Ct. 952 (1987).

U.S. 57, 67, 106 S.Ct. 2399, 2405 (1986).

**Punitive Damages**

Under the ADA, a plaintiff may recovery punitive damages if the plaintiff demonstrates that the employer engaged in a discriminatory practice or practices with malice or with reckless indifference to the federally protected rights of the plaintiff. 42 U.S.C. § 1981a(b)(1).   The availability of punitive damages depends on the defendant's state of mind and not the nature of the defendant's egregious conduct.   The employer must at least discriminate in the face of a perceived risk that its actions will violate the ADA.   Plaintiff must also show that the malfeasant agent served in a managerial capacity and committed the wrong while acting in the full scope of employment. *E.E.O.C. v. E.I. DuPont de Nemours & Co.*, 480 F.3d at 732.   However, under the good faith exception, an employer may not be vicariously liable for punitive damages where the discriminatory employment decisions of their manager agents are contrary to the employer's good faith efforts to comply with the ADA. *Id.*

**State Law Claim: Intentional Infliction of Emotional Distress**

Plaintiff also asserted a claim for intentional infliction of emotional distress under Louisiana Civil Code Article 2315.   In order to recover for intentional infliction of emotional distress, a plaintiff has the burden of proving: (1) that the conduct of the defendants was extreme and outrageous; (2) that the emotional

19

distress suffered by him was severe; and (3) that the defendants desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from their conduct. *White v. Monsanto Co.*, 585 So.2d 1205, 1209-10 (La. 1991); *Moresi v. State, Department of Wildlife and Fisheries*, 567 So.2d 1081, 1095 (La. 1990); *Deus v. Allstate Insurance Co.*, 15 F.3d 506, 514 (5th Cir. 1994).   The conduct complained of must be so outrageous in character and so extreme in degree that it goes beyond all possible bounds of decency and is regarded as utterly intolerable in a civilized community.   *Id.* Liability arises only where the mental suffering or anguish is extreme, and the distress suffered must be such that no reasonable person could be expected to endure it. *White*, 585 So.2d at 1210.

## Analysis

The threshold issue in this case is whether the plaintiff can establish that she is an "individual with a disability" within the meaning of federal and state law governing disability claims. Whether the plaintiff is disabled within the meaning of the ADA and the LEDL is the first essential element of the plaintiff's claims based on disparate treatment, failure to accommodate and harassment.

The record contains uncontested evidence that the plaintiff has an "impairment" - lumbar and thoracic scoliosis, which was

diagnosed at the age of 15 or 16.[25]  As a result the plaintiff's spine is bent at an angle that exceeds 40 degrees.[26]  The scoliosis resulted in or contributed to a host of other physical problems - early degenerative disc disease at L3/4, L4/5 and L5/S1; cervical disc herniation/pain at C5/6; sacroiliac inflamation; chronic pain/discogenic pain; headaches/migraines.[27]  Plaintiff received continuous, ongoing treatment for the symptoms associated with the scoliosis and related physical conditions, including pain and sleep medications, antidepressants, muscle relaxers, injections and physical therapy.[28]  According to the plaintiff's doctors the impairments of the plaintiff's spine are chronic, progressive,

---

[25] The ADA does not define the term "impairment," but the EEOC regulations provide that "physical or mental impairment" means:
   "(1) Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine; or (2) Any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.  29 C.F.R. § 1630.2(h)(1) & (2).
Deas, 152 F.3d at 476, n. 8.

[26] Plaintiff was 40 years of age at the end of her employment with the sheriff's office.  Plaintiff depo., p. 25.  Dr. Isaza explained the degree of the plaintiff's scoliosis.  Dr. Isaza depo., pp. 62-63, 68, 69.

[27] Dr. Isaza depo., pp. 14, 15, 21-23, 37, 46-49; Dr. Wissner depo., pp. 21, 22, 30-33, 47, 48.

[28] Plaintiff depo., pp. 22, 29-32, 226-27, 295; Dr. Isaza depo., pp. 38, 42, 51, 52; Dr. Wisner depo., pp. 21, 22, 26-29, 31, 32, 34; Dr. Gladney depo., pp. 9-10.

degenerative and cannot be cured by surgery or medication.[29]

The record contains contested evidence related to the effects of the plaintiff's impairments on her ability to function at work and in her everyday life, i.e., plaintiff's ability to lift, sit, stand, walk, bend, stoop, reach and sleep.  Defendant argued that the plaintiff was not substantially limited in sleeping or standing, relying on some of the plaintiff's testimony, Dr. Wissner's testimony and information contained in the plaintiff's May 2004 fitness for duty forms.[30]  Defendant asserted that this evidence shows that the plaintiff is only restricted from prolonged standing, which is not a substantial limitation on the ability to stand.  Defendant also argued that evidence of the effect on the plaintiff's sleep is insufficient to demonstrate that the plaintiff's is substantially limited in sleeping, or that her difficulty in sleeping is greater than that of the average person.

Plaintiff opposed the defendant's arguments and asserted that the evidence demonstrates that she has permanent and substantial limitations in the major life activities of walking, stooping, sitting, working, standing and sleeping.  Plaintiff principally relied on testimony from Dr. Isaza.  He testified that the plaintiff cannot lift over 20 pounds, cannot perform prolonged or repetitive bending, stooping or reaching activities above the level of her shoulders, and cannot engage in prolonged sitting or

---

[29] Dr. Isaza depo., pp. 10, 18, 19, 22-25, 37, 38, 47, 51, 52, 61-63.

[30] Dr. Isaza depo., pp. 31-39; Dr. Wissner depo., pp. 12, 13, 29-33; plaintiff depo., pp. 146-49, 166-77.

standing, and so must be able to change positions.  Dr. Isaza also noted that on one visit the plaintiff reported that she was unable to stand for longer than 15 minutes, and that the plaintiff also had limping due to inflamation of the sacroiliac joint.  Dr. Isaza testified that the scoliosis and conditions resulting from it had affected, and could affect in the future, the plaintiff's gait/ability to walk.  According to Dr. Isaza the plaintiff's level of scoliosis was severe[31] and the plaintiff was substantially limited in her ability to sit and stand.  Dr. Isaza stated that the plaintiff "cannot sit straight for [a] normal working day," and "prolonged standing will also flare-up her symptoms and she won't be able to tolerate it for [a] long period of time."[32]

Based on this summary judgment evidence, a reasonable trier of fact could find that the plaintiff is substantially limited in the major life activities of reaching, sitting, standing and/or walking.  Therefore, viewed as a whole and in the light most favorable to the plaintiff, the evidence which establishes that the plaintiff's impairment is incurable, chronic and progressive,[33] and

---

[31] Dr. Wissner also testified that the plaintiff's scoliosis was "quite severe," and that the plaintiff had chronic pain attributable to the severe scoliosis, which could have been a trigger for her headaches.  Dr. Wissner depo., pp. 47-48.

[32] Dr. Isaza depo., pp. 16, 18, 31, 33-35, 49, 59-67; Ballard depo., p. 26.  Dr. Isaza also testified that in the course of treating the plaintiff, he never thought or considered that the plaintiff was malingering, faking or making up anything.  Dr. Isaza depo., p. 67.

[33] Along with the effects of the impairment, the nature of the impairment, its duration or expected duration, and its actual or expected permanent or long-term impact, are factors to be
(continued...)

the conflicting evidence regarding the effects of the plaintiff's impairment, is sufficient to create a genuine dispute for trial on the question of whether the plaintiff is disabled under the statute.[34]

Defendant also argued that the plaintiff cannot establish the second element of her claim under the ADA and the LEDL - that she is a "qualified individual" with a disability.  Defendant argued that the plaintiff was not qualified to perform the essential functions of her job as a communications deputy because she had a record of excessive absenteeism and failed to show up for work regularly.  Defendant submitted and relied on the following evidence: (1) during the time period from December 2003 to December 2004 the plaintiff missed 23 days of work and her pay was docked seven times, and (2) in December 2004 the plaintiff was given an oral and written warning for excessive absenteeism.[35]

---

[33](...continued)
considered in determining whether an impairment is substantially limiting.  See, *Gonzales*, *supra.*

[34] Because there is a genuine dispute for trial on the question of whether the plaintiff is substantially limited in the major life activities of reaching, sitting, standing and/or walking, it is unnecessary to discuss the evidence related to other major life activities raised by the parties - sleeping, stooping and working. Similarly, since there is a genuine dispute for trial on the question of whether the plaintiff has an actual physical impairment that substantially limits one or more major life activities, it is unnecessary to decide whether the evidence is sufficient to support a finding that the plaintiff is disabled under the "record of" or "regarded as" prongs of the disability definition.  42 U.S.C. § 12102(2)(B) and (C).

[35] Defendant Exhibit A, Plaintiff deposition, attached Defendant Exhibit 7 (employee warning on excessive absenteeism dated December 16, 2004, issued to plaintiff and signed by Lt.
(continued...)

Plaintiff essentially argued that the defendant's evidence fails to demonstrate that he is entitled to summary judgment on the question of whether the plaintiff was qualified to perform the essential functions of her job as a communications deputy. Plaintiff argued that the evidence shows: (1) any problems she had with her attendance were a direct result of the defendant's refusal to accommodate her disability by allowing her to work an eight hour day shift; (2) based on the plaintiff's reasons for the absences and the defendant's leave policy, there was no basis to issue a warning on excessive absenteeism; (3) a non-disabled employee who missed work for 20 days in 2004 was not issued a warning; and, (4) there is no evidence that the plaintiff failed to satisfactorily perform the duties of her job as a communications deputy.

Plaintiff's arguments are persuasive.  There is no evidence that the plaintiff could not or did not perform any of her actual job duties, or that the plaintiff's actual performance of her job was unsatisfactory.[36]  Defendant relied solely on the argument that the plaintiff was not a "qualified individual" because of excessive absenteeism.  However, plaintiff has come forward with sufficient evidence to create a substantial jury question as to the legitimacy of the warning for excessive absenteeism, and the other issues related to the question of whether the plaintiff was able to do the

---

[35](...continued)
Bass).

[36] Frederic depo., pp. 11, 25, 27, 53, 75-78, 94; Ballard depo., p 21; McGehee depo., p. 10; Opperman depo., pp. 24-25; Maurello depo., pp. 19-20, 33; Raborn depo., p. 87.

essential functions of her job as a communications deputy.  A
reasonable trier of fact could find that, based on office
attendance policies the plaintiff's record of attendance for 2004
was not unsatisfactory, the warning issued to the plaintiff for
excessive absenteeism was not justified, the defendant could have
alleviated any attendance problem by providing a reasonable
accommodation, or that the plaintiff's attendance was not so
irregular or excessive that it amounted to an inability to perform
an essential function of her job - regular attendance.[37]  Simply
put, the defendant is not entitled to summary judgment based on its
argument that the plaintiff was not a "qualified individual" under

---

[37] The evidence which demonstrates that there is a genuine
dispute for trial on this element of the plaintiff's claim is found
in the excerpts of plaintiff's deposition testimony in Plaintiff
Exhibit A, the evidence cited in footnote 36 of this report and
recommendation, as well as the following deposition testimony:
Ballard depo., pp. 16, 17, 20, 39-40; Bass depo., pp. 21-23, 35,
36, 66-73; McGehee depo., pp. 14-17, 30, 39-40, 65-67; Frederic
affidavit and depo., all excerpts from pp. 14-73, 94; Raborn depo.,
pp. 18-22, 24, 25, 29, 37, 50, 54-57, 60-61.

*See*, *Hypes v. First Commerce Corp.*, 134 F.3d 721, 727 (5th
Cir. 1998).  Defendant cited *Hypes* in support of its argument.
However, the circumstances of this case are distinguishable from
*Hypes*.  Plaintiff in *Hypes*, despite having a doctor's release to
work a full schedule without restrictions, missed 16 full days and
23 half days of work in five months.  He provided no medical
documentation to explain his absences during this time period, or
to support his request for reasonable accommodation.  Unlike *Hypes*,
the plaintiff here presented evidence which would establish that
the defendant waited an entire year before warning her of excessive
absences, the plaintiff provided medical excuses for her absences,
and the warning was contrary to office policy.  With supporting
letters from her doctors, the plaintiff requested, and the
defendant could have provided a reasonable accommodation (a
schedule change) which would have reduced her number of absences.
Also, the plaintiff's attendance was not so unpredictable or
excessive that she could not fulfill the regular attendance
requirement of her job.

the statute.

The evidence cited thus far in connection with the threshold issue of whether the plaintiff is a qualified individual with a disability, along with other summary judgment evidence, equally demonstrates that summary judgment cannot be granted on any other grounds.   It is unnecessary to recite and discuss all of the evidence presented.  Essentially, the evidence as whole when viewed through the lens of the applicable law, clearly establishes a genuine dispute for trial on all of the issues raised in the defendant's motion.   A brief summary of the remaining issues and the reason why summary judgment cannot be granted is sufficient.

Summary judgment cannot be granted on the merits of the plaintiff's claim based on failure to accommodate.   Plaintiff presented evidence that she provided a medically documented request for an accommodation, that there were positions available that she applied for or that could have been made available, that she was willing to accept an eight hour day position at reduced pay, and that her supervisors refused her requests.   In support of the argument that the plaintiff failed to request a reasonable accommodation, the defendant relied on testimony from Frederic and Raborn.   They essentially asserted that the plaintiff either did not apply for available positions, or refused to move to a job that would require her to accept a lower salary.  The evidence on this issue is clearly conflicting.  On summary judgment the court cannot resolve this credibility dispute or weigh the evidence.  These disputed issues of material fact must be decided by the jury.

Similarly, with regard to the communications positions open in

27

2004, the conflicting evidence presented by both sides establishes a genuine dispute for trial on the plaintiff's disparate treatment claim.  A reasonable trier of fact could view the evidence and choose to disbelieve the defendant's reasons for not moving the plaintiff into an eight hour day shift position in communications. It is well established that sufficient evidence to find that the employer's asserted justifications are false, along with the plaintiff's prima facie case, may permit the trier of fact to conclude that the employer unlawfully discriminated.  *Reeves*, 120 S.Ct. at 2108-09.

A reasonable trier of fact could also find in favor of the plaintiff on all of her remaining claims:  constructive discharge, harassment/abusive working environment, retaliation,[38] punitive damages and intentional infliction of emotional distress.  All of these legal issues must be resolved based on the totality of the evidence and circumstances.  The evidence already cited, and the plaintiff's evidence related to events that occurred in connection with the defensive tactics class and fitness for duty in May 2004, and the disability-based comments in the workplace,[39] could support

---

[38] Making a request for reasonable accommodations qualifies as a protected activity under the ADA.  *Jenkins*, 487 F.3d at 317; *Miles-Hickman v. David Powers Homes, Inc.*, 589 F.Supp.2d 849, 868 (S.D.Tex. 2008).  Plaintiff presented evidence that she requested reasonable accommodations for limitations resulting from her disability.

[39] The evidence which illustrates that summary judgment cannot be granted is summarized and cited in the plaintiff's opposition memorandum. See, evidence cited and discussed in the plaintiff's opposition memorandum, pp. 8-10, footnotes 47-52.  A reasonable jury could find from all of this evidence that the defendant's
(continued...)

a verdict in the plaintiff's favor on all or any of the remaining claims.

## Recommendation

It is the recommendation of the magistrate judge that the Motion for Summary Judgment filed by defendant Sid Gautreaux, Sheriff of East Baton Rouge Parish, be denied.

Baton Rouge, Louisiana, March 27, 2009.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

---

[39](...continued)
actions with regard to the defensive tactics class and fitness for duty were not justified, and that the plaintiff's disability was the reason or a motivating factor for the defendant's conduct.  If the jury makes such a finding, the jury could further find discrimination, harassment and retaliation based on these actions and the other incidents the plaintiff testified about - making her go to more than one doctor, not allowing her to come to work and docking her pay, and preventing her from wearing her uniform and carrying her weapon/gear.  Of particular note is the evidence showing that Frederic and Raborn have conflicting stories as to who ordered the plaintiff to get a fitness for duty certification and why she was ordered to do so.
*Id.* pp. 5-7, footnotes 30-40 (evidence of disability-based comments in the workplace); p. 14, footnotes 74 and 75 (evidence related to the plaintiff's request to be a reserve officer); pp. 13-14, footnotes 71-73 (evidence related to the defendant's lack of a policy regarding disability-based discrimination/harassment).